ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT
 I. INTRODUCTION
This matter is before the court on cross-motions for summary judgment. The individual cases were consolidated in the Magistrate Division of the Tax Court then specially designated to the Regular Division. *Page 2 
 II. FACTS
The following summary is based on the pleadings of the parties and certain affidavits. Plaintiffs are the parent corporations of two unitary groups, each of which filed an Oregon consolidated corporation excise tax return for their tax year ended December 31, 1998. (Am Consol Compl at ¶ 4; Answer to Am Consol Compl at ¶ 3.) The two unitary groups are themselves members of one affiliated group of corporations filing one federal consolidated corporate income tax return.[1]
(Am Consol Compl at ¶ 5; Answer to Am Consol Compl at ¶ 3.) Although particular calculations for each plaintiff must be made, for purposes of this order, unless otherwise indicated, Plaintiffs are collectively referred to as "USW" or "taxpayer." The year at issue is the year of USW beginning on June 13, 1998, and ending on December 31, 1998. (Am Consol Compl at ¶ 1; Answer to Am Consol Compl at ¶ 3.) The particular issue is what amount of net operating loss carryforward is available to USW in that year.
Prior to 1998, USW was a member of an affiliated group of corporations of which a corporation, to be referred to in this order as Media One (MO), was the common parent. (Am Consol Compl at ¶ 7; Answer to Am Consol Compl at ¶ 4.) The affiliated group of corporations had filed federal consolidated returns for several years.[2] *Page 3 
As the corporations were also members of a unitary group under ORS 317.705(2), they were required to, and did, file an Oregon consolidated return pursuant to ORS 317.710 and ORS 317.715.[3]
(Am Consol Compl at ¶ 8; Answer to Am Consol Compl at ¶ 5.)
As of June 12, 1998, MO completed a transaction in which all of the issued and outstanding shares of USW, then owned by MO, were distributed to the then shareholders of MO. (Am Consol Compl at ¶ 10; Answer to Am Consol Compl at ¶ 7.) This transaction is referred to in this order as the "spin-off." Under federal tax rules, the tax year of MO was not interrupted by reason of the spin-off and MO filed a consolidated federal income tax return for the full year period ending December 31, 1998 (the 1998 MO return). (Am Consol Compl at ¶ 11; Answer to Am Consol Compl at ¶ 1.) Under federal tax rules, the calendar year 1998 was divided into two tax years for USW. Returns had to be prepared for each year. The first year was for the period January 1, 1998, to and including June 12, 1998 (the pre-spin year). The second year was for the period beginning June 13, 1998, and ending December 31, 1998 (the post-spin year).
The 1998 MO return reflected all tax items of MO for the full year 1998, but the tax items of USW only for the period through and including June 12, 1998. (Am Consol Compl at ¶ 11; Answer to Am Consol Compl at ¶ 1.) The MO tax items, standing alone, resulted in a significant net operating loss. (Am Consol Compl at ¶ 13; Answer to Am Consol Compl at ¶ 1.) *Page 4 
The tax items for USW, standing alone, for the pre-spin year resulted in a positive net income for USW. On a consolidated basis, netting the income of USW against the loss of MO, the 1998 MO return showed a net loss.[4]
USW filed federal and Oregon returns for the post-spin year. The federal return showed a positive net income.[5]
(Am Consol Compl at ¶¶ 22-23; Answer to Am Consol Compl at ¶ 11.) The Oregon return reflected both the results of USW for that period, on a stand-alone basis, as well as an amount of net operating loss carryforward from the USW year that began on January 1, 1998, and ended on June 12, 1998. (Am Consol Compl at ¶ 25; Answer to Am Consol Compl at ¶ 13.)
After an audit and the filing of amended returns, the parties find themselves separated as to the correct amount of net operating loss carryforward that USW may deduct in the calculation of its Oregon taxable income for the post-spin year of USW. It is perhaps needless to point out to those who have read this far, USW contends for a larger net operating loss deduction than does Defendant (department).
 III. ISSUE
What is the proper amount of net operating loss carryover available to USW for its short year ending December 31, 1998, and years subsequent to that?
 IV. ANALYSIS
A. Calculation of Income or Loss Generally; LossCarryovers
The calculation of Oregon taxable income or loss for Oregon excise tax purposes for *Page 5 
affiliated groups of corporations is governed by ORS 317.010(8) through (10).[6] See ORS 317.715(3)(a). An Oregon return for each unitary group existing within any affiliated group is needed. ORS 317.715(2). If the business operations of any unitary group are interstate in character, allocation and apportionment is required by ORS 317.010(10)(b) in connection with the determination of taxable income or loss of the group properly attributable to Oregon.
Determination of "taxable income or loss" under ORS 317.010(10), including application of the apportionment rules under ORS 317.010(10)(b), is done without regard to loss carryovers under ORS 317.476 or ORS 317.478 to the year for which the calculation is being made. See ORS 317.010(10). Loss carryovers are taken into account for any year only after computing the income or loss for that year. The loss carryovers are the last step in reaching a final "Oregon taxable income" figure under ORS 317.010(8). If a year for which Oregon taxable income is being computed has positive taxable income prior to consideration of loss carryovers, the application of those carryovers serves to reduce or eliminate the positive income and perhaps create a loss subject to carryover to future years.[7]
If, for the year in question, there is a taxable loss, that loss is added to any unused prior year loss carryover amounts and such combined loss may be carried forward, subject to stated statutory limitations. ORS 317.476.
The foregoing rules on losses and carryover of losses apply whether the taxpayer stands alone or is a member of a unitary group of corporations filing an Oregon consolidated return. As this case involves corporations that were members of a unitary group, the court now turns to a discussion of the rules relevant to unitary groups. *Page 6 
B. The Composition of a Consolidated Oregon Return:Background
Prior to the adoption of the unitary tax provisions of ORS chapter 317 in 1984, Oregon had followed a so called "world-wide combined report" system of corporate taxation. See Or Laws 1984, ch1 §§ 4-5 (Spec Sess). Under that system, corporations that were unitary with each other had their tax items combined into one resulting number in a "combined report."[8] The tax items could be those of unitary corporate affiliates organized or operating anywhere in the world. Corporations were considered unitary if, among them, there was a sharing or exchange of value as demonstrated by such characteristics as centralized management or administration or flow of value among group members.[9] See
ORS 314.363 (1983).
A unitary group of corporations that had operations in Oregon and other jurisdictions throughout the world would first combine all income and net out all losses of the combined unitary group. While that base of net income, or loss, would typically be much larger than any possible amount of income or loss experienced by members in Oregon, the calculation did not stop there. The worldwide income base would then be apportioned to Oregon. In computing the apportionment factors, the worldwide apportionment statistics for the group would go in the denominator of the factors and cause the worldwide apportionment factors for Oregon to be much smaller than such factors calculated only for companies operating in Oregon. The smaller factors could be viewed as an appropriate counterweight to the larger base of income subject to apportionment. *Page 7 
Great objection was made by foreign sovereigns and taxpayers about the worldwide combined report method. Arguments were raised that the system was overly burdensome and resulted in an unfair taxation of extra-territorial income. See Advisory Commission on Intergovernmental Relations, State Taxation of MultinationalCorporations 4, 9-19 (1983) available athttp://digital.library.unt.edu/ark:/67531/metadc1324/. Economic threats and other pressure became so great that Oregon, along with several other states, adopted so-called "water's edge" provisions. See Or Laws 1984, ch 1, §§ 1-5 (Spec Sess). The purpose of those provisions was to place a limit on which corporations could be included in a combined report and to limit that to only those corporations that were formed in the United States. Combination and apportionment would remain as foundational principles, but the scope of combination would be limited.
The method for achieving the "water's edge" result was to limit the combined group of corporations to only those that were includable in a federal corporate consolidated income tax return.Compare Or Laws 1984, ch 1, § 2(2) (added to the Oregon Revised Statutes as ORS 317.710 (2)), with Or Laws 1984, Ch 1, § 4(1) (added to the Oregon Revised Statutes as ORS 317.705(1)). The reason for this reference was that the federal consolidated return statutes only permit United States domestic corporations to be included in such a return. IRC § 1504(b)(3).
C. The Composition of a Consolidated Oregon Return: CurrentRule
Pursuant to ORS 317.710(2), corporations that are included in a federal consolidated return have return filing requirements as set out in ORS 317.715. However, the federal definition of an affiliated group does not trump the Oregon unitary business principle, retained from the pre-1984 system. That principle was and is that tax results of corporations that are unitary must be combined as a first step in determining tax liability. ORS 317.715(2). *Page 8 
That combined income (or loss) is then apportioned to the group members according to the apportionment factors of each member.See ORS 317.715(3)(a); ORS 317.010(10)(a) to (c).
Thus, even though there will only be one federal consolidated return for an affiliated group of corporations, there may be more than one Oregon consolidated return for that group. Where a federal consolidated return includes more than one unitary group — essentially more than one trade or business as defined in ORS 317.705(3) — the particular unitary groups existing within the federal consolidated return are separated and each such separate unitary group prepares an Oregon consolidated return. ORS 317.715(2). The separation is done in accordance with the federal return regulations that address separate calculation of income for group members. Id. Any corporations in such an Oregon consolidated return that are subject to Oregon tax jurisdiction are required to file or join in a common filing of the Oregon consolidated return. ORS 317.710(5)(a). For each such unitary group income or loss is calculated at the group level and apportioned among the members of the unitary group. ORS 317.715(3)(a).
D. Affiliation
Recall that only corporations that are affiliated for federal purposes can be included in an Oregon unitary group and hence in an Oregon consolidated return. Further, only corporations as to which there is a common parent owning at least 80 percent of the shares of each member are affiliated. See ORS 317.705(1) and
IRC § 1504(a)(1) to (2).[10] But not all affiliated corporations are necessarily in the same Oregon unitary group. For that to occur, the corporations must be linked not only by the federal stock ownership rule but also by the "single trade or business" requirement of subsections (2) and (3) of ORS 317.705. That requires that as to all members of *Page 9 
the group, there be such things as centralized management and centralized administrative services or functions.
There is no question that MO and USW were members of the same federal and Oregon groups for years prior to the spin-off. There is also no question that MO and USW would not be permitted to be included in the same federal or Oregon consolidated return for the post-spin year of USW. The question in this case has to do with whether, or to what extent, items in the 1998 MO return for a period in 1998 during which affiliation did not exist may affect the pre-spin year of USW during which affiliation did exist.
In this case the necessary affiliation between MO and USW terminated on June 12, 1998, when the USW group was spun off. For federal and Oregon purposes, the membership of USW in the larger MO affiliated group ended on that day. The tax year for MO continued, however, under federal and Oregon law. Treas Reg 1.1502-76(b); ORS 314.085. It is that fact that sets the context of the present dispute.
As mentioned above, in its pre-spin year, USW had positive taxable income for federal and Oregon purposes. The 1998 MO return reported a large loss. That loss was the outcome of operations over the full year of MO. That amount of loss was reduced in part because of the netting against that loss of the income of USW in its pre-spin return, a return that was a component part of the 1998 MO full year return. The question in this case is what amount, if any, of the loss shown on the 1998 MO full year return should be assigned to USW for Oregon purposes. Under Oregon law, the department does not contest that some amount of loss can be carried forward to the post-spin year of USW and, subject to other statutory limitations, years thereafter. But, what amount? *Page 10 
E. Taxpayer Position
The position of taxpayer is that the amount of loss to be assigned to USW should be determined as follows:
 1. The total loss amount for MO, standing alone, for the full 1998 year should be taken into account. (Ptfs' Cross-Mot for Summ J at 10.)
 2. The income amount for the pre-spin year of USW, standing alone, should be subtracted from the full year MO loss. (Ptfs' Cross-Mot for Summ J at 4-5.)
 3. Because the full year loss of MO exceeds the income of USW in the pre-spin year, a portion of that net loss should be apportioned to USW based on the Oregon apportionment percentage for USW. (Am Consol Compl at ¶ 25.)
 4. The amount so apportioned to USW is then the net operating loss carryover for USW to be available for use in the short year for USW beginning June 13, 1998, and years subsequent to that. (Ptfs' Cross Mot for Summ J at 10-11.)
F. Department Position
The position of the department is that the amount of loss to be assigned to USW should be determined as follows:
 1. The full year 1998 loss of MO, standing alone, should be multiplied by a fraction, the numerator of which is 163 (the number of days between January 1, 1998, and June 12, 1998) and the denominator of which is 365. (Def's Mot for Summ J at 7.)
 2. From the amount of loss so calculated (essentially a daily proration of the full year loss to the period before the spin-off of USW) there should then be subtracted the amount of income of USW for its pre-spin year. This amount would be as shown on returns for the period ending on June 12, 1998. (Id.)
 3. The amount of net loss so calculated would then be subject to apportionment to determine how much of the loss was to be assigned to USW. (Id. at 9.)
 4. The amount so apportioned to USW is then the net operating loss carryover for USW to be available for use in the post-spin year for USW and years subsequent to that. (Id.)
The parties are separated primarily, if not exclusively, as to the first step or element in their respective calculations. *Page 11 
G. No Mid-Year Departure Rule
The analysis in this case is difficult because the available statutory guidance on the particular question is either sparse or overly general. Further, although Oregon follows federal definitions generally, in this situation the proper analysis involves principles on which the federal system is silent.
There is no Oregon statute that specifically addresses the question in this case. There are statutes on operating losses and the carryforward of such losses. See
ORS 317.476 to ORS 317.485. There are, as discussed above, statutes on consolidated returns for affiliated corporations. There are, however, no statutes that address situations where loss carryforwards must be calculated for groups of corporations in situations where the affiliation ceases during a tax period.
The rules promulgated by the department do address loss calculation in the context of cessation of affiliation. However, the rules address only the narrow situation in which a departing member of a consolidated group departs precisely at the end of a common tax year shared by all members of the affiliated group.See OAR 150-314.675(3).[11] There simply is no provision in the statutes or the department's rules for the particular situation in which the departing member of the group leaves the group in the middle of the tax year of the consolidated group of corporations — especially where the remaining corporation or group has a loss for the full year. Recall that the federal tax year of the remaining corporation or group does not end with the departure of another member of the group.[12] *Page 12 
In situations where departure is precisely at year end, the rules to be followed are clear. One takes a base equal to the full year loss for the group and multiplies it by the apportionment percentage for the company whose carryover amount is being computed. That produces the amount of loss assigned to the departing member.See OAR 150-314.675(3).
That calculation satisfies both combination and apportionment principles so important to Oregon. The total of unitary group items are addressed and then apportioned among the jurisdictions in which the group or its members operate. The rule for year-end departures also gives effect to the unitary principle that tax items to be considered are only those generated during the time that any corporation was a member of the group. The calculation for the full year situation does not consider tax items from periods when the corporation in question was not a member of the consolidated or unitary group.
The full year rule simply does not address the mid-year departure problem. Accordingly, it does not address the particular version of the problem presented here: what is the result when the departing member has income for its year ending in the departure and the parent entity files a full year federal return showing an overall loss?
H. Federal Rule for Mid-Year Departures
The problem of mid-year departure from affiliated or consolidated groups is not unique to the Oregon system. Indeed, the federal income tax system to which Oregon's tax system is in many ways linked faces the same problem. What loss is to be assigned to a member of a consolidated group for carryover purposes in the event the member departs from the group midyear? In the federal system, the calculation is not made by use of either combination of member items or interstate apportionment percentages. Interstate apportionment is not a federal concern. See CrystalCommunications, Inc. v. Dept. ofRev., ___ OTR ___ (July 19, 2010) (slip op at 7-8). *Page 13 
The amount of operating loss assigned to any member is determined by the ratio in which that individual member contributed to the overall group "pool" of loss for the loss year (the "contribution to pool" method). See Treas Reg § 1.1502-21T(b)(2)(iv).[13] The separate loss figures for each member of the consolidated group are determinative in calculating the loss carryover for that member. No combination of results occurs. The only period considered for the departing member is the short period during which the departing member was in the group. The tax items of the group members who remain for the full year are considered but they do not serve to ever increase the amount of loss assigned to the departing member.[14]
If this method based on the relative individual company contribution to the pool of loss were to be applied in this case, there would be no loss assigned to USW for its pre-spin year. The simple reason for this is that for that tax year of the MO group, USW contributed no loss to the "pool." That result would be true regardless of the results of the remainder of the year for the MO group.
I. Federal Mid-Year Departure Rule Cannot Apply
Although Oregon has chosen to link itself to the federal system for purposes of determining, subject to certain adjustments, taxable income or loss, we have not made that linkage so complete that it interferes with Oregon specific matters such as tax rates, penalties and other matters. Further, although we have adopted certain terms from the Federal Internal Revenue code — for instance, "affiliated group" — we have retained state tax concepts as to unitary *Page 14 
groups and apportionment.[15] The court has no difficulty in concluding that among those other provisions of Oregon law that must be accommodated are the provisions on unitary combination reporting and the provisions for allocation and apportionment. The federal system simply does not use the concept of separate unitary reporting for separate unitary groups existing within a federal affiliated group or the system of allocation and apportionment.
As taxpayer successfully argued in this proceeding, use of the federal "contribution to pool" approach by Oregon would fundamentally depart from the unitary taxation concept that group loss, or income, is to be shared among group members based on apportionment percentages. (Def's Cross-Mot for Summ J at 23.) The unitary concept departs from the separate accounting approach found in the "contribution to pool" rules of the federal system — rules that determine results based on the particular separate operations of group members and not on the outcome of the affiliated group as a whole.[16]
Unlike the federal "contribution to pool" approach, the department's position respects both the combination principle and the apportionment principle. It also seeks to include in the combination only items from the period during which the unitary relationship existed. Taxpayer levels a number of arguments against the department position. Taxpayer also makes those arguments to justify its position, one that includes in unitary returns items from non-unitary periods. The court now turns to those arguments. *Page 15 
J. Taxpayer Argument — Federal Tax Periods
Taxpayer, having correctly avoided application of the federal "contribution to pool" concept, would like, nonetheless, to rely on some aspects of the federal computation of loss for the tax period from which the loss is to be carried — namely respect for federal tax periods. (Ptfs' Cross-Mot for Summ J at 18.) Taxpayer argues that this approach gives effect to linkage between the tax periods for federal purposes and the corresponding tax periods for Oregon purposes. (Id.)
Although ORS 314.085 does link Oregon tax periods to federal periods, there are two problems with taxpayer's argument — remembering that the issue here is the proper calculation of tax items for USW. The first problem is that the matter in question is not what tax year or years MO or USW had at any relevant time. It is agreed that for the 1998 year there are two tax periods for USW, the pre-spin year and the post-spin year. (Am Consol Compl at ¶¶ 11, 23; Answer to Am Consol Compl at ¶¶ 1, 11.) It is also agreed that the full year 1998 was one tax year for MO. (Am Consol Compl at ¶ 11; Answer to Am Consol Compl at ¶ 1.) Nothing in the position of the department changes any tax year of USW or MO or causes those years to be different from the corresponding federal tax year. Rather the issue is how much loss from the 1998 tax year of MO is to be allocated or assigned to the pre-spin year of USW.
The second problem with taxpayer's position is that, in making this argument, taxpayer would have the court ignore a fundamental unitary taxation principle, one that is as fundamental as the group calculation rule that saved taxpayer from the adverse outcome produced by the federal "contribution to pool" approach. *Page 16 
That other unitary principle is that calculations for the unitary group are to reflect a combination for the period the members are, in fact, in a unitary relationship.[17]
Taxpayer's position would also elevate form over substance. In the federal system, the only reason that MO's year continued after the spin-off is because of the federal rule that the year of the common parent does not end with the departure of another member. Oregon follows that federal lead, but there is no indication in the statutes or reason to pretend that a continuing reporting period requires the department to treat the unitary relationship as continuing. Indeed, the Oregon consolidated return rules do not recognize a so called common parent for any substantive purpose. An Oregon consolidated return for one unitary group within a federal affiliated group might, in fact, not include the so called "common parent." This is recognized in the only place that the concept of a "common parent" is found, OAR 150-317.710(5)(a)-(A)(1), which provides:
 "Generally, the consolidated Oregon return shall be filed by and in the name of the common parent corporation. If the common parent corporation is not a member of the affiliated group filing the consolidated Oregon return or is not subject to Oregon taxation, the return shall be filed in the name of a member of the affiliated group doing business in Oregon as defined under ORS 317.010(4). If more than one member is doing business in Oregon, the name of the member having the greatest presence in Oregon shall be used. If the name under which a prior year's consolidated Oregon return was file is changed, a statement shall be attached to the current year's return advising the department of the name change."
One conclusion is clear, for substantive purposes a federal common parent is no different from any other member of an affiliated group when applying the substantive Oregon rules on determination of income of a unitary group. *Page 17 
Fundamental in those rules is that returns for unitary groups only reflect items from periods when the unitary relationship existed.
The position of the taxpayer based on federal tax periods is not well taken.
K. Taxpayer Arguments Based on OregonLaw — ORS 314.675
Taxpayer also makes an argument based on ORS 314.675. ORS 314.675 provides in relevant part:
 "If the operations of a taxpayer subject to ORS 314.280 or 314.615 result in a net loss, that net loss shall be apportioned in the same manner as the net income so as fairly and accurately to reflect the net loss of the business done within this state. The net loss applicable to Oregon income pursuant to this section shall then become the net loss deduction for subsequent years which may be deducted from apportioned net income in the same manner as set forth in the Personal Income Tax Act of 1969, and in ORS chapters 317 and 318."
(Emphasis added.) The reliance of taxpayer on ORS 314.675 is misplaced. As shown by the phrase emphasized in the preceding quotation, ORS 314.675 addresses apportionment of group loss among or between several states in those situations where a taxpayer, or group of taxpayers, has business operations in more than one state. ORS 314.675 does not address the calculation of an operating loss or loss carryover. Nor does ORS 314.675 address how unitary group loss that is apportionable to Oregon is to be assigned to members of a unitary group for purposes of loss carryover. Taxpayer's error in looking to ORS 314.675 is understandable, however, insofar as the department has chosen to promulgate its rule on attribution of loss to former group members under ORS 314.675. However, whatever the appearances to the contrary, neither party can, through placement of a rule provision or through argument, convert ORS 314.675 into a statute dealing with computation of unitary group loss or division of loss among unitary group members for purposes of applying the net operating loss carryover rules. *Page 18 
Taxpayer points to the statement in ORS 314.675 that an apportioned loss for a year becomes "the net loss deduction for subsequent years." (Ptfs' Cross-Mot for Summ J at 20.) Nothing in the department's position violates that provision. The reason is that the statutory provision does not address how to calculate the net loss for the year in question. Loss for the pre-spin year of USW calculated in accordance with the department's position will be net loss for subsequent years for the taxpayer in question.
Taxpayer also points out that ORS 314.675 directs that net loss is to be apportioned in the same manner as net income. (Ptfs' Cross-Mot for Summ J at 19.) True. But this case involves determination of a tax item that is then to be allocated among members of a unitary group. It does not involve apportionment in the sense that that term is used in ORS 314.675. This case concerns loss and not income.
That said, a case could arise involving a mid-year departure of a group member in a situation where only income exists for the group members. If that were the case, the court has no doubt that if a taxpayer departed from an Oregon consolidated return and was later visited with an obligation to pay tax based on income earned by the remaining members of the group who experienced gains and income after the departure, that taxpayer would be very upset and would make arguments similar to those made by the department in this case. Those arguments would most likely succeed.
L. Taxpayer Arguments Based on OregonLaw — ORS 317.710(5)(c)
Taxpayer also relies, heavily, upon the language in ORS 317.710(5)(c) that states:
 "(c) Whenever two or more corporations are required to file a consolidated state return under paragraph (a) of this subsection, any reference in this chapter to a corporation for purposes of deriving Oregon taxable income shall be treated as a reference to all corporations that are included in the consolidated state return." *Page 19 
Taxpayer argues that this provision requires that the loss of MO for the full 1998 year be considered in calculating the loss to be assigned to USW. Taxpayer's logic appears to be: (1) a unitary group is treated as one corporation for purposes of application of the law; (2) that one deemed corporation has the tax items of each component member for a full period; and (3) therefore the return must take into account the MO loss for all of 1998. (Ptfs' Cross-Mot for Summ J at 21-22.)
There are several significant problems with the logic of taxpayer. First, the taxpayer's argument confuses the "who is included" question with the "for what period are items included" question. There is no need to do that. It is possible to consider MO items and USW items together without taking them from different time periods. It is possible to retain the federal return period without being forced to take into consideration all items from any such period.[18]
Most importantly, attention must be paid to the condition that must exist for the statutory provisions of ORS 317.710(5)(c) to apply. That condition is that "two or more corporations are required to file a consolidated state return." That condition can only exist when the two or more corporations are in a unitary relationship — for the simple reason that state consolidated returns apply only to unitary groups. See ORS 317.715(2). In turn, a unitary relationship can exist only if the 80 percent common equity ownership test is satisfied. See ORS 317.715; ORS 317.705(1).[19] The necessary implication or conclusion from those rules is that *Page 20 
ORS 317.710(5)(c) applies only so long as the equity ownership rule is satisfied. The only other possibility — that unitary concepts would somehow apply to items from periods when the unitary relationship does not exist — has no support in the history, purposes or terms of our statutes addressing unitary taxation.
The court concludes that only the losses of MO incurred on or before June 12, 1998, can be taken into account. To the determination of that amount, the court now turns.
M. Ratable Allocation
The position of the department is that the loss of MO that may be taken into account in computing loss carryover for USW is only the loss of MO for the period from January 1, 1998, to and through June 12, 1998. (Def's Mot for Summ J at 7.) Logically there are two possibilities as to calculation of this amount. The first possibility would be a separate specific calculation of income and loss for just that period — a so called "closing of the books." The second possibility would be some form of ratable allocation — with the only logical base for the ratio being relative time periods.
Taxpayer objected on brief and at the hearing on this matter that the position of the department required an unauthorized "closing of the books" to determine the MO loss for the pre-spin period. (Ptfs' Reply at 5.) That is not accurate. The department's position does not require any closing of the books. Indeed, it is premised on there being no such closing. If there was such a closing of the books, there would be no need to engage in the time ratio approach that the department uses in calculating the MO loss to be taken into account.
The method for which the department argues is one of ratable allocation based on time. That method is not unreasonable. Indeed, it is a method available to taxpayers filing a federal consolidated tax return and finding it necessary to calculate results for individual members. See *Page 21 
Treas Reg 1.1502-76(2). That fact is significant because in ORS 317.715(2) the legislature has addressed the issue, for Oregon purposes, of dealing with portions of items combined in a federal return that need to be assigned to different unitary groups existing within one federal affiliated group. The direction of the legislature is to follow the federal consolidated return regulations that touch on separate company determinations.
It is noteworthy that taxpayer in this proceeding has not raised any argument that a time based ratable allocation would be unduly burdensome or produce an inequitable or unreasonable result, apart from its basic position rejected by the court. If such an argument were made, ORS 317.725(1)(b), authorizing the department to permit relief from the unitary rules or make adjustments so as to more clearly reflect income, could come into play.[20]
The department method produces a reasonable calculation of the MO loss for the period during which it was unitary with USW. That loss amount, after reduction by the income of USW for its pre-spin year, is to be apportioned for Oregon loss carryforward purposes. *Page 22 
 V. CONCLUSION
The position of department as to the determination of the amount of net loss to be assigned to USW for its pre-spin year is sustained. The case is continued for consideration of any remaining issues, including differences, if any, as to the computation of relevant apportionment factors to be applied under the department's position. Now, therefore,
IT IS ORDERED that Defendant's motion for summary judgment is granted; and
IT IS FURTHER ORDERED that Plaintiffs' cross-motion for summary judgment is denied.
Dated this ___ day of August, 2011.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPTON AUGUST 30, 2011, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
 APPENDIX A OAR 150-314.675 (3).
(3) If a corporation was included in a consolidated return in the year of the net loss and now files a separate return, or is included in a different consolidated return in the year to which the net loss is carried, the consolidated Oregon net loss must be apportioned to the corporations included in the net loss return for purposes of determining the allowable net loss carryover. The consolidated Oregon net loss shall be apportioned to the corporations with taxable activities in Oregon, based upon their Oregon apportionment percentages. The net losses computed can be carried forward and deducted in subsequent years returns (subject to the carryover limitations specified in OAK 150-317.476(4)). The following example demonstrates the application of this section:
Example: Corporations C and D file separate returns in 1987. They filed a consolidated Oregon return in 1986. Additional facts are as follows:
1986 consolidated net loss before apportionment § (4,000)
Each corporation's share of the consolidated Oregon net loss is computed as follows:
 Corporation C Corporation D Consolidated
Average Factor 10% 15% 25%
Consolidated Oregon net loss:
Corporation C's share (($4,000) x 10%) ($400)
Corporation D's share (($4,000) x 15%) ($600)
Consolidated Total (($4,000) x 25%) ($1,000)
 Corporation C Corporation D
1987 separate Oregon net income or (loss) $1,000 $ 300
Allowable net loss deduction (400) (300)
Oregon net loss carryover to 1988 -0- (300)

[1] An affiliated group of corporations is as defined in Internal Revenue Code (IRC) section 1504 for purposes of the federal consolidated return rules, and ORS 317.705(1). Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 1997. All references to the IRC are to the 1997 edition.
[2] For purposes of this order it is assumed that MO and USW were the only members of the MO affiliated group.
[3] It appears that MO filed its Oregon returns on the basis that it as well as both plaintiffs constituted one unitary group. As mentioned above, Plaintiffs have filed returns in Oregon as two unitary groups for their years ending December 31, 1998, and following.
[4] Such netting of tax items is one of the primary features of filing a consolidated return for an affiliated group of corporations. The netting is subject to certain limitations or restrictions in federal and Oregon law.
[5] As will be explained below, no amount of MO loss was set off against the USW income.
[6] For purposes of the discussion in this order as to the operation of statutes, it is assumed that only business income or loss exists and there is no nonbusiness income or loss.
[7] Oregon only allows losses to be carried forward. ORS 317.476. For federal purposes, losses may be carried back or forward. IRC section 172.
[8] To keep nomenclature straight, the combined report had many of the same functions that the consolidated return does under current law. It was merely the name given to the return before the adoption of the amendments made in the 1983 session.
[9] These tests are now found in ORS 317.705(3); prior to this codification they were developed in such cases as ContainerCorp. v. Franchise Tax Bd.,463 US 159, 103 S Ct 2933, 77 L Ed 2d 545 (1983). Most states, including Oregon, developed case law or statutory definitions of a unitary business that were coterminous with the constitutional borders of the doctrine.
[10] ORS 317.705(1) defines "affiliated group" for purposes of ORS 317.705 to ORS 317.715 as having the same meaning as that found in IRC section 1504.
[11] The relevant provisions of OAR 150-314.675 are attached as Appendix A to this order.
[12] Taxpayer suggests that the rule as written must be applied nonetheless. (Ptfs' Cross Mot for Summ J at 17.) However, taxpayer points to no source of law that explicitly dictates that result. For the reasons set forth in this order, the court does not accept this position of the taxpayer.
[13] All citations to the Treasury Regulations (Treas Reg) are to the 1998 edition.
[14] Under the so-called "absorption" rule income of remaining members can, however, reduce the loss that would otherwise have been assigned to the departing member. See Treas Reg § 1.1502-21T(b)(2)(ii). However, unlike what taxpayer proposes to occur in Oregon in this case, losses of remaining members can never increase the loss carried out of the group by the departing member under the federal rules.
[15] It is important to remember that ORS 317.013 and ORS 317.018 both speak to application of federal laws and definitions, but in each case only unless modified by provisions of Oregon law.
[16] Over the years in which the unitary method was developed and upheld, many taxpayers objected that the unitary apportionment system assigned to them income even though, calculated on a separate basis they had less or no income. Those objections have been unsuccessful. It cannot be argued, then, that assignment of a portion of group loss to a member that had income on a separate accounting basis is inappropriate.
[17] In this regard Oregon and the federal system are, in fact, not so different. With the exception of the absorption rule under Treas Reg section 1.1502-21T(b)(2)(ii), federal items from periods when affiliation did not exist are not combined.
[18] The court also notes that ORS 317.710(5)(c) is found in a statutory section that concerns itself with return requirements and not with the substantive rules that produce the items shown on a return. Taxpayer stretches too far in suggesting that this section or subsection overrides the substantive rules found in ORS 317.715.
[19] A "unitary group" under ORS 317.705(2) can exist only within an "affiliated group" under ORS 317.705(1) and IRC section 1504(a)(1). Because an "affiliated group" under both Oregon and Federal law must meet the 80 percent common equity ownership requirement of IRC section 1504(a)(2), a unitary group must likewise meet the 80 percent common equity ownership test. In 2009 the department made this requirement explicit through a revision to OAR 150-317.705(3)(a).
[20] Although the court is not presented with this issue, there could be cases in which a taxpayer in a similar situation to taxpayer here could ask and be allowed to make a calculation of the remaining company items on an actual "closing of the books."
 *Page 1